## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**TYRONE HENDERSON,**
**on behalf of himself and others**
**similarly situated,**

      **Plaintiff,**

**v.**                              **Civil Action No**: **3:11cv514-REP**

**VERIFICATIONS INCORPORATED,**

      **Defendant.**

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

COMES NOW, the Plaintiff, Tyrone Henderson, by counsel, and for his opposition to the Defendant's Motion to Dismiss his Amended Complaint (Def. Mem.) (Docket # 21), he respectfully submits this memorandum of law.

### INTRODUCTION

The Plaintiff, Mr. Henderson, has filed a fact-intensive Amended Complaint, above and beyond that which is required by Fed. R. Civ. P. 8, which not only states its claims, but also puts the Defendant fully on notice of the allegations against it. In support of its Motion to Dismiss, the Defendant applies and argues an incorrect standard under Fed. R. Civ. P. 12(b)(6) and asserts as true its own disputed version of facts. Mr. Henderson's Amended Complaint more than adequately alleges plausible claims under each of the three Fair Credit Reporting Act (FCRA) provisions challenged in Defendant's Motion, 15 U.S.C. §§ 1681k(a)(1), 1681d(a)(2) and 1681i(a)(6).

### ARGUMENT

## I.     DEFENDANT'S MOTION DEPENDS UPON AN INFIRM APPLICATION OF RULE 12(b)(6).

Verification prosecutes the present Motion almost entirely based upon its misconception of the threshold, standard and purpose of Rule 12(b)(6).  It incorrectly takes the same overly aggressive route attempted by other Defendants' after *Twombly* and *Iqbal*.  In order for the Defendant to prevail in its motion, it must demonstrate that the Mr. Henderson has supplied no set of facts which, taken as true, facially state a plausible claim for relief. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 554-55 (2007).   While Fed. R. Civ. P. 8(a)(2) simply requires a "short and plain statement of the claim showing that the pleader is entitled to relief," the statement must contain "'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Ashcroft v. Iqbal,* ____U.S.____, 129 S.Ct. 1937, 1949 (2009)(quoting *Twombly,* 550 U.S. at 555)(internal citation omitted).  Rule 12(b)(6) is appropriately reserved for truly conclusionary allegations such as, "[D]efendants' actions 'embodied violations of the [Fair Debt Collections Practices] Act' and 'violated the Act in other ways.' " *Nix v. Welch & White, P.A.*, 55 F. App'x 71, 73 (3d Cir. 2003).

In order to determine whether the Defendant prevails, it must overcome the considerable hurdle in "the familiar standard for a motion to dismiss under Fed.R.Civ.P. 12(b)(6)." *Sumner v. Tucker,* 9 F.Supp.2d 641, 642 (E.D.Va.1998). The Rule requires that the facts alleged by the Plaintiff are presumed to be true and the complaint should be dismissed only when "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *White v. Jones*, No. 1:10CV799, 2010 WL 3395695, at *2 (E.D. Va. Aug. 23, 2010) *aff'd,* No. 10-7283, 2010 WL 5439712 (4th Cir. Dec. 29, 2010)(quoting *Hishon v. King & Spalding,* 467 U.S. 69, 73 (1984)).

Notwithstanding the reasonable burden applied post-*Twombly*/*Icbal*, these two cases have for the last several years inspired attempts by many defendants to graft the pleading threshold of Rule 8 into the "failure to state a claim" standard of Rule 12(b)(6).  Instead of a motion for a more definite statement, defendants now simply file a Motion to Dismiss complaining upon theoretical principal about some omitted fact or demanded detailed allegation.  But this is not what Rule 12(b)(6) (or Rule 8(a)) requires.  "A complaint 'need only give the defendant fair notice of what the claim is and the grounds upon which it rests.' *Id.* at 93, 127 S.Ct. 2197 (alteration and internal quotation marks omitted)."  *Coleman v. Maryland Court of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) *cert. granted,* 131 S. Ct. 3059, 180 L. Ed. 2d 884 (U.S. 2011) and *aff'd sub nom. Coleman v. Court of Appeals of Maryland*, 10-1016, 2012 WL 912951 (U.S. Mar. 20, 2012).  *See also Stout v. Meletis*, 3:09CV538, 2012 WL 618688 (E.D. Va. Feb. 24, 2012). As the Fourth Circuit explained, "[A] plaintiff is not required to plead facts that constitute a prima facie case in order to survive a motion to dismiss, *Coleman*, 626 F.3d at 190. *(internal citation omitted)*.  Instead, all that is required of Plaintiff is that he "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.,* 324 F.3d 761, 765 (4th Cir.2003) (*citing Dickson v. Microsoft Corp .,* 309 F.3d 193, 213 (4th Cir.2002); *Iodice v. United States,* 289 F.3d 270, 281 (4th Cir.2002)).  As offered below, certainly the 103-paragraph Amended Complaint does this.  Certainly there are other facts, many more, never pled in the Amended Complaint.  But this of course is neither material nor germane at this posture. Verifications has commenced discovery and that process will better and more properly satisfy Defendant's contrived hunger for an exhaustive inventory of Plaintiff's facts and evidence.

## II.  PLAINTIFF STATES A CLAIM UNDER 15 U.S.C. § 1681k(a)(1) (Count 1).

The FCRA imposes a set of otherwise unique requirements on a Consumer Reporting Agency that sells criminal (or public record) background checks to employers.  Those at issue in this litigation are contained at § 1681k(a), which states:

> (a) **In general**
> A consumer reporting agency which furnishes a consumer report for employment purposes and which for that purpose compiles and reports items of information on consumers which are matters of public record and are likely to have an adverse effect upon a consumer's ability to obtain employment shall—
> (1) at the time such public record information is reported to the user of such consumer report, notify the consumer of the fact that public record information is being reported by the consumer reporting agency, together with the name and address of the person to whom such information is being reported; or
> (2) maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to arrests, indictments, convictions, suits, tax liens, and outstanding judgments shall be considered up to date if the current public record status of the item at the time of the report is reported.

15 U.S.C. § 1681k(a).  The section provides that a consumer reporting agency that furnishes a consumer report to a consumer's prospective or current employer must provide the consumer written notice that it is doing so "at the time" the report is delivered.  The only instance in which it is freed from such obligation is if it follows "strict procedures" to insure that the public record information in the report "is complete and up to date."  The Defendant's procedures never attempt such contemporaneous verification of its data with the underlying court or primary source, relying instead on unverified non-contemporaneous databases, or as the FTC categorizes it, "stored data."[1]  The Court has previously considered a nearly identical case based on the same allegations and rejecting similar challenges.  *Williams v. LexisNexis Risk Mgmt. Inc.*, CIV A

---

[1] Federal Trade Commission (F.T.C.)(Guide/Report), "40 YEARS OF EXPERIENCE WITH THE FAIR CREDIT REPORTING ACT" www.ftc.gov/os/2011/07/110720fcrareport.pdf (F.T.C.), 73.

306CV241, 2007 WL 2439463 (E.D. Va. Aug. 23, 2007) ("Section 1681k of the FCRA requires that, when a consumer reporting agency ("CRA") furnishes a report to a customer regarding a consumer, and the report contains information on the public record that is "likely to have an adverse effect" upon a consumer's ability to obtain employment, the CRA must "notify" the consumer "at the time" it furnishes the report to the prospective employer. 15 U.S.C. § 1681k(a)(1). ⁝ N2 Alternatively, the CRA may adopt "strict procedures" to ensure that such reports are accurate. 15 U.S.C. § 1681k(a)(2). That section of § 1681k is not at issue in this litigation, however.")

In support of his § 1681k(a)(1) claim, Plaintiff alleges:  Mr. Henderson applied for a job with Interstate Brands Corporation (hereafter "IBC").  (Am. Comp. ¶10).  For that purpose, IBC requested his consumer report. (*Id*. ¶11).  To create the report, Defendant obtained its criminal records data by purchasing it from a private database wholesaler, National Background Data by CoreLogic (hereafter "CoreLogic").  (*Id*. ¶¶12-13).  Defendant then furnished this CoreLogic "hit" (though not the details of the criminal record) to IBC.  (*Id*. ¶16).  Defendant never provided Mr. Henderson notice that it had furnished this CoreLogic hit, let alone "at the time" it did so. (*Id*. ¶17).  Plaintiff correctly alleges that this was Defendant's first violation of § 1681k(a).

After furnishing this initial report, Defendant then proceeded to contact a third party consumer reporting agency in Ohio, Advanced Background Check.  (*Id*. ¶¶18-19).  It purchased from Advanced Background Check details regarding the Pennsylvania criminal records Defendant had mistakenly attributed to the Plaintiff.  (*Id*. ¶¶18-19, 22).  Advanced Background Check itself did not obtain these records directly from the courthouse, but instead merely consulted another online website, which did not contain adequate matching identifiers.  (*Id*. ¶19). Had any of these reporting agencies actually verified the database information directly with the

public records source, the inaccuracy would have been easily spotted and corrected.  (*Id*. ¶¶19-21, 35).  After receiving the Advanced Background Check information, Defendant then added it to the Plaintiff's file and issued a new report to IBC that contained those details of the criminal record obtained from Advanced Background Check.  (*Id*. ¶22).   Despite that Verifications furnished the Final Report, it did not send a notice to the Plaintiff "at the time" it furnished the report.  (*Id*. ¶24).  Both the Verifications First Report and Final Report were "consumer reports" governed and as defined by the FCRA. (*Id*. ¶26).

Despite providing a report for employment purposes to Plaintiff's and putative class members' prospective employers containing public record information likely to have an adverse affect upon their ability to obtain or maintain employment, Defendant failed to provide notice "at the time" of the fact that the public record information was being reported by it, together with the name and address of the person(s) to whom such information was being reported.  (*Id*. ¶38).

On information and belief, Plaintiff alleges that Defendant did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court clerk) immediately before furnishing a report which includes such information.  Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case. (*Id*. ¶39).

Thus, the Amended Complaint alleges in detail:

(a.) Defendant furnished two employment consumer reports regarding the Plaintiff that contained derogatory (and inaccurate) criminal records;

(b.) the criminal history Defendant furnished did not come from the actual primary source of the public records; Defendant never provided the Plaintiff notice that it was furnishing these reports, let alone "at the time" it did so;

(c.) Defendant never took any action to confirm that the data it received from CoreLogic and Advanced Background Check was complete and up to date before it reported same to IBC;

(d.) Defendant never provided an "at the time" notice to the Plaintiff; and

(e.) Defendant's FCRA were the same for the class as they were for Mr. Henderson.

Defendant's objection to Plaintiff's pleading as to this claim is inconsistent. Initially, Verifications complains, "Plaintiff does not allege that Verifications failed to maintain strict procedures designed to insure that whenever public record information, likely to have an adverse effect on a consumer's ability to obtain employment, is reported it is complete and up to date." (Def. Mem., Docket No. 22, at 5.) Yet Defendant acknowledges Plaintiff's allegation that:

> On information and belief, Plaintiff alleges that Defendant did not attempt for any consumer to follow the option available at 15 U.S.C. § 1681k(a)(2), which requires a consumer reporting agency to actually contact the original source of public records information (e.g. the Court clerk) immediately before furnishing a report which includes such information. Title 15 U.S.C. § 1681k(a)(2) is thus inapplicable to the consumer reports at issue in this case.

(Am. Compl., Docket 20, ¶ 38). Verifications recognizes the inclusion of such allegation in the Amended Complaint, but discounts it as "clever pleading" that remain deficient. Defendant suggests two reasons this is so: (1) because Plaintiff somehow "misstates the requirements of § 1681k(a)(2)", or, just the opposite, (2) that Plaintiff's allegation is a mere "legal conclusion", ostensibly because it recites the text of § 1681k. (Def. Mem. at 6.) Defendant is wrong in both regards, but the second of these assertions – that the Plaintiff alleges only a legal conclusion – is patently and obviously untrue. As detailed above, Mr. Henderson actually alleges his claim in much more detail than the notice-pleading threshold would require.

Defendant's remaining argument is also infirm. Verifications claims, "[Section] 1681k(a)(2) does not require a consumer reporting agency to 'actually contact the original source of public records information.' " (Def. Mem. at 6). But it does. By necessary import, judicial

and regulatory interpretation and even Industry and Defendant's own view of the law.  The text of (a)(2) requires Defendant to "maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. For purposes of this paragraph, items of public record relating to … convictions … shall be considered up to date if the current public record status of the item at the time of the report is reported."  15 U.S.C. ¶ 1681k(a)(2). (emphasis added).  Every authority to consider this language has interpreted it to require such contemporaneous review of the "public record status" and not merely a stored secondary database or an indirect purchase of private data from another reporting agency.  As one of the industry leaders in the field (Les Rosen) summarized, "Criminal information can be considered up to date only if the current public record status of the item is known at the time the report is made. Essentially, this alternative requires a CRA to search the actual court case, arrest or other information at its source."  Carl R. Ernst and Les Rosen, "*'National' Criminal History Databases, Issues and Opportunities in Pre-employment Screening*", at 4, (November 26, 2002). Available online at http://www.brbpub.com/articles/CriminalHistoryDB.pdf (last viewed March 22, 2012).[2]  To satisfy this second option, "The CRA must at least re-verify information that was

---

[2] It is difficult to find an industry source that does not agree. For example, Ekeholm and Associates, LLC cautions,

> Unverified criminal records reported from stored data (i.e. "instant" criminal databases) are not FCRA complaint, per the FTC Staff Opinion Letter.  Screening companies are strictly regulated by the Federal Trade Commission via the Fair Credit Reporting Act (FCRA) and are required by federal law to maintain strict procedures to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date. There are several background screening companies who are non-compliant and are selling you "instant" stored database derived criminal records outright without first verifying the accuracy and completeness of

collected prior to the current request for a consumer report for employment purposes to ensure that the status has not changed."  National Consumer Law Center, *Fair Credit Reporting*, Sixth Edition (2006), p.126; *see also Poole v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557 (E.D. Ky. 2006).  Relying upon database records updated every thirty days does not suffice. Allan, FTC Informal Staff Opinion Letter, May 5, 1999.  ("Further, Congress went on to provide an explicit definition of what would be considered "up to date" for purposes of Section 613: the current public record status at the time reported. Read in combination, these provisions demand that such public record information be updated immediately before reporting.").  Available online at http://www.ftc.gov/os/statutes/fcra/allan.shtm.

Verifications used two secondary sources for its criminal history reports, CoreLogic for its overview and national search and the Advanced Background Check for the specifics of the purported criminal convictions in Pennsylvania.  Plaintiff has alleged that its reliance on this secondary source method was not compliant with § 1681k(a)(2).  In its brief, Defendant does not suggest any reason why Plaintiff is incorrect.  It could not in good faith do so.  Even its website concedes the point that the product it purchases from CoreLogic, its "National Criminal Record Locator" does not meet a "strict procedures" standard:

> The NCRL database contains more than 275 million criminal records from throughout the U.S. …
> NCRL Limitations
> Because an NCRL search may have found the assault conviction in Florida, on the surface the NCRL seems like an excellent replacement for a traditional county, statewide or Federal criminal record search. In reality, the NCRL or any other national criminal database should not replace a traditional criminal record search because: … (2.) Data accuracy and completeness is unknown: Records in the

---

the data with the originating source of the record before reporting and putting YOU at risk.

http://www.screensafecheck.com/dispelling-the-myths.htm last viewed on March 22, 2012.

> NCRL database may be outdated due to infrequent updates. The database may be
> updated sporadically or not at all.

http://www.verificationsinc.com/newsletter/04272007/locator.html last viewed on March 23,

2012.  (emphasis added).

Defendant's response is expected.  Verifications will certainly acknowledge that its

"CoreLogic" search and data source does not satisfy the "strict procedures" threshold.  But, it

will explain, that is why Defendant does not publish all of the detail received from CoreLogic

and instead next purchased the Pennsylvania records from Advanced Background Check.  And

this is actually where the real litigation in this case will take place.  First, Plaintiff alleges and

Defendant will contest that the reporting to IBC of the more general "Hit" result for the

CoreLogic database search was itself a separate "consumer report" governed by the FCRA, §

1681k(a).  Even though Defendant may not have shared the details of the inaccurately attributed

Pennsylvania convictions, it did report a red flag hit – a summary of the CoreLogic database

output.

Second, Defendant will stake its defense as to the Final Report on its entitlement to rely

on Advance Background Check.  This reliance, it contends, would constitute a "strict procedure"

to insure that each criminal record it "reported [] is complete and up to date."  At a Rule 12(b)(6)

posture, this is certainly not a proper basis for dismissal.  Yet even at a more level stage of the

case, such reliance on another private agency to provide its view of the court records is not

adequately a "strict procedure" under § 1681k(a)(2). *Poore v. Sterling Testing Sys., Inc.*, 410 F.

Supp. 2d 557, 572 (E.D. Ky. 2006) (Summary judgment denied on CRA argument that it

satisfied "strict procedures" by relying on other reporting agencies – USIS and Advance

Background Check.)

## III.  PLAINTIFF STATES A CLAIM UNDER 15 U.S.C. § 1681d (Count 2).

Plaintiff also alleges that Verifications violated 15 U.S.C. § 1681d, the FCRA provision governing "investigative consumer reports."  The FCRA defines an "investigative consumer report" as

> a consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information.

15 U.S.C. § 1681a(e).  The Amended Complaint alleges that, "Defendant's furnishing of Investigative Consumer Reports without receiving first the disclosures required by 15 U.S.C. § 1681d(a)(2) violated 15 U.S.C. § 1681d(1) as to the Plaintiff and other members of the Section 1681d class."  (Am. Compl. ¶65).  Section 1681d(d)(1) states that a "consumer reporting agency shall not prepare or furnish an investigative consumer report unless the agency has received a certification under subsection (a)(2) of this section from the person who requested the report." 15 U.S.C.A. § 1681d(d)(1).  That subsection (§ 1681d(a)(2)) requires the employer to certify to the Defendant CRA that it has provided the set of FCRA disclosures unique to investigative consumer reports.  Defendant does not contend that it solicited, obtained or received such disclosures from IBC.  Instead, its Motion is premised solely on a demand for the full details of fact and, possibly evidence, that would be used at trial to prove this claim.  This is not a proper demand upon Rule 12(b)(6).

Defendant of course is the entity that has all of this evidence.  It conducted the pre-employment investigation, and it already and exclusively would know "who was interviewed, who conducted the interviews, and when the interviews took place."  (Def. Mem. at 8).  And thus its feigned exasperation that, "Logic dictates that Plaintiff is in possession of these basic facts" is disingenuous at best.  (*Id.*)  In fact, the Count 2 allegations in the Amended Complaint are

11

derived almost entirely from the information Verifications provided when Mr. Henderson finally obtained a copy of his report.  In addition to the facts recounted above, the Plaintiff pled:

The Defendant itself described its report as an "Investigative Consumer Report."  As the Amended Complaint states, Plaintiff received a letter dated November 17, 2009 from Interstate Brands Corporation with a copy of what the Defendant described as an "Investigative Consumer report" and advised the Plaintiff that a decision had been made not to give his application any further consideration based on information contained in the Consumer Report.  (Am. Compl. ¶25).

Contrary to Defendant's claim that it has no notice of the basis for Plaintiff's claim that its report was governed by § 1681d, the actual report provided by Verifications contains a list of employers that it contacted and what it learned as a result of such contacts.  As Plaintiff pled, the Verifications Final Report was also an "investigative consumer report" because a portion of the report contained and was based upon information regarding the Plaintiff's previous work history, which constituted information regarding his character, general reputation and/or personal characteristics, and was obtained through personal interviews with his previous employers having knowledge concerning such items of information.  (*Id*. ¶27).

This is plainly information and CRA conduct that implicates and is governed by § 1681d. *Poore v. Sterling Testing Sys., Inc.*, 410 F. Supp. 2d 557, 569 (E.D. Ky. 2006) ("As to whether the report is an "investigative consumer report," again section 1681a(e) defines an "investigative consumer report," as a "consumer report or portion thereof in which" certain information is obtained through personal interviews. 15 U.S.C. § 1681a(e). The report produced by Sterling contained information on Poore's character and personal characteristics that was obtained

through a personal interview with Poore's former supervisor. Accordingly, it is an "investigative consumer report" under 15 U.S.C. § 1681a(e).")

## IV. PLAINTIFF STATES A CLAIM UNDER 15 U.S.C. § 1681i(a)(6) (Count 3).

Count 3 is based on the allegation that Defendant failed to provide Plaintiff notice of the results of its investigation when it falsely claimed that it had actually verified the accuracy of its reporting with the courthouse or governmental entity that was the source of the disputed public record. Defendant does not understand the legal claim and thus devotes the majority of its argument to a defense of its method of investigation. (Def. Mem. at 9-10). Certainly Plaintiff contests the reasonableness of Defendant's "investigation", but that is the basis for his individual claim under § 1681i(a)(1), Count 6. The present claim is different. It challenges Defendants' compliance with the obligation to provide consumers the results of such investigation.

Section 1681i(a)(6) provides, in relevant part:

(6) Notice of results of reinvestigation.--
(A) In general.--A consumer reporting agency shall provide written notice to a consumer of the results of a reinvestigation under this subsection not later than 5 business days after the completion of the reinvestigation, by mail or, if authorized by the consumer for that purpose, by other means available to the agency.

15 U.S.C. § 1681i(a)(1)(A). Plainly by the text of the statute, a CRA may not simply disclose a make-believe result to the consumer's dispute. It must disclose the results.

In his Amended Complaint, Mr. Henderson alleges: After Defendant furnished the Final Report and Plaintiff received same in late 2009 from the employer, Plaintiff contacted Defendant and disputed the inaccuracy. (Am. Compl. ¶32). As it had with the original searches of the Pennsylvania records, the Defendant did not itself contact the actual courthouse records and instead relied on Advanced Background Check, which again simply hired another person to check the Pennsylvania judicial system website. (*Id*. ¶34).

Although as a result of the Plaintiff's dispute, Verifications never examined any records in Pennsylvania and never contacted the court source of those records, when Defendant responded to Plaintiff's dispute and for its results of the investigation it claimed that it had examined the original records in Pennsylvania and thereby verified the accuracy of its reporting. (*Id*. ¶33). Such statements were false. (*Id*. ¶36).

As a matter of law, and certainly at a Rule 12(b)(6) posture, the Plaintiff can establish that Defendant did not provide Mr. Henderson the actual results of its investigation when it represented that it had contacted the courthouse and confirmed that the social security numbers and other identifiers matched. Such "result" was factually impossible. Whether by sloth or dishonesty, Verifications has never provided Mr. Henderson the actual result to his dispute and its "investigation." Plaintiff has properly pled a violation of § 1681i(a)(6). Compare *Saunders v. Branch Banking And Trust Co. Of VA*, 526 F.3d 142, 149 (4th Cir. 2008) (Affirming verdict under comparable FCRA provision governing creditor investigations based upon the inaccurate or incomplete reporting of the results of investigation as opposed to the reasonableness of the investigation itself).

## CONCLUSION

For the reasons articulated in this Memorandum in Opposition, the Plaintiff respectfully requests that the Defendant's Motion to Dismiss be denied in its entirety. If the court determines that the Amended Complaint lacks particularity, the Plaintiffs move the court for leave to file an second amended complaint.

**TYRONE HENDERSON,**
**For himself and on behalf of all**
**similarly situated individuals.**

By:     _____/s/_____
        Leonard A. Bennett
        VSB #37523
        Attorney for Plaintiff
        Consumer Litigation Associates, P.C.
        763 J. Clyde Morris Blvd., Suite 1-A
        Newport News, VA 23601
        Phone: (757) 930-3660
        Fax: (757) 930-3662
        Email: lenbennett@clalegal.com

        Dale W. Pittman
        VSB #15673
        Attorney for Plaintiff
        The Law Office of Dale W. Pittman, P.C.
        112-A W Tabb Street
        Petersburg, VA 23803-3212
        Telephone: (804) 861-6000
        Fax: (804) 861-3368
        Email: dale@pittmanlawoffice.com

## CERTIFICATE OF SERVICE

I hereby certify that on the 23d day of March 2012 I have electronically filed the foregoing with the Clerk of Court using the CM/ECF system, which will then send a notification to the following:


Charles Kalman Seyfarth
LeClair Ryan PC (Richmond)
Riverfront Plaza - East Tower
951 E Byrd St
Richmond, VA 23219
804-916-7159
Fax: 804-916-7259
Email: charles.seyfarth@leclairryan.com


Megan Starace Ben'Ary
LeClair Ryan PC (Alexandria)
2318 Mill Road
Suite 1100
Alexandria, VA 22314
703-647-5933
Fax: 703-647-5983
Email: megan.benary@leclairryan.com


_____/s/_____
Leonard A. Bennett, VSB#37523
Counsel for the Plaintiff
CONSUMER LITIGATION ASSOCIATES, P.C.
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Tel:    757-930-3660
Fax:    757-930-3662
lenbennett@clalegal.com